ORAL ARGUMENT NOT YET SCHEDULED
No.15-7078

---

IN THE
𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
𝔣𝔬𝔯 𝔱𝔥𝔢 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔆𝔬𝔩𝔲𝔪𝔟𝔦𝔞 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

---

LOCAL 689, AMALGAMATED TRANSIT UNION

Plaintiff-Appellant

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

Defendants-Appellee

_____

On Appeal from the
United States District Court for the District of Columbia
Case No. 1:15-cv-00536 (Hon. Rosemary M. Collyer)

_____

**OPENING BRIEF FOR APPELLANT**
_____

Douglas Taylor 959502
GROMFINE, TAYLOR& TYLER P.C.
1420 King Street, Suite 500
Alexandria, VA 22314
703.683.7780
703.683.8616 (fax)
Dtaylor@lbgt.com

November 24, 2015                    *Counsel for Appellant*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for Appellant in the above-captioned matter submits the Certificate of Parties, Rulings, and Related Cases.

**(A) Parties.**

Plaintiff in the court below and Appellant in this Court is Local 689, Amalgamated Transit Union ("Local 689", "ATU" or the "Union").

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, the undersigned counsel further submits that:

- Local 689 is not an affiliate or parent of any corporation, and no corporation, unincorporated association, partnership or other business entity.

Defendant in the court below and Appellee in this Court is Washington Metropolitan Area Transit Authority ("WMATA" or the "Authority").

**(B) Rulings Under Review.**

The Appellant seek review of the July 14, 2015 order of the District Court for the District of Columbia in Civil Action No. 15-536 (RMC) (Docket Entry 19), ordering the preliminary injunction issued on June 29, 2015 which enjoined Local 689 from arbitrating two grievances was made permanent. The order is reproduced in the Joint Appendix at volume I page 371, and it was accompanied by a Memorandum Opinion (Docket Entry 18) reproduced in the Joint Appendix

Volume I page 358.

**(C) Related Cases.**

Undersigned counsel are not aware of any related cases pending in this

Court or any other Court specifically enjoining Local 689 from arbitrating

grievances.

Respectfully submitted,
Appellant
**Local 689, Amalgamated Transit Union, AFL-CIO**
By its Counsel,


____/s/ Douglas Taylor_____
Douglas Taylor 959502

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Appellants Brief and Joint Appendix,
was electronically transmitted this 24th day of November, 2015 and will be
delivered in hard copy to:
Gerard Stief
Chief Counsel-Appeals & Special Litigation
WMATA
600 Fifth Street, N.W.
Washington, D.C. 20001
Attorney for Appellee WMATA

Harvey Levin
Thompson Coburn LLP
1909 K Street, N.W. Suite 600
Washington, D.C. 20006-1167
Attorney for Appellee WMATA

___/s/ Douglas Taylor_____
Douglas Taylor 959502

# TABLE OF CONTENTS

Jurisdictional Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

Issues Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

Pertinent Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Statement of the Case and the Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

      Original Grievances and Labor Disputes. . . . . . . . . . . . . . . . . . . . . . . .   2

      Applicable Policies, Procedures, Contract and Statutory Provisions. . . . .   4

      Grievance Dispute Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . .   8

      District Court Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

      Trial Court Opinion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

I.    THE DISTRICT COURT REFUSED TO ENFORCE THE PARTIES'
      LAWFUL COLLECTIVE BARGAINING AGREEMENT TO
      SUBMIT UNRESOLVED GRIEVANCE DISPUTES TO BINDING
      ARBITRATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

      A.    WMATA and the Union are Authorized by Statute to
            Agree Through Collective Bargaining to Arbitrate
            Workplace Disputes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

      B.    The Collective Bargaining Agreement Between These
            Parties Requires Binding Arbitration to Resolve
            "Questions and Grievances.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

C.    Contractual Grievance Resolution by Professional Labor
      Arbitrators is Favored by the Courts as a Matter of Law.. . . . . . . .  17

D.    The Procedural Arbitrability of the Garnett Grievances
      were Resolved by the Court, Rather than by a Board of
      Arbitration as the law Commands.. . . . . . . . . . . . . . . . . . . . . . . . . .  19

      1.    The court below determined, in essence, that
            the grievant did not have standing to
            challenge the application of WMATA's
            background check policy because he had
            never been directed impacted by it.. . . . . . . . . . . . . . . . . . .  19

      2.    Mr. Garnett's standing to grieve under the
            contract is an issue of procedural, not
            substantive arbitrability which should be
            resolved in arbitration, not in court.. . . . . . . . . . . . . . . . . . .  21

II.   THE GRIEVANCE ISSUES COMPRISE "LABOR DISPUTES"
      WHICH ARE ARBITRABLE AS A MATTER OF STATUTE... . . . . . .  24

III.  THE DISTRICT COURT ESSENTIALLY, AND ILLEGALLY,
      DENIED THE UNION ACCESS TO DETAILED INFORMATION
      ABOUT WMATA'S APPLICATION OF ITS  BACKGROUND
      CHECK POLICY TO UNION-REPRESENTED WORKERS.. . . . . . . .  28

Conclusion and Remedy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

# TABLE OF AUTHORITIES

Section 81 of the WMATA Compact, DC Code Section 9-1107.01(81). . . . . . . .   1

D.C. Code Section 9-1107.01(66(b)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16, 24

D.C. Code Section 9-1107.01 (66(c)). . . . . . . . . . . . . . . . . . . .   7, 8, 14, 24, 25, 27

14 Penn Plaza v. Pyett, 556 U.S. 247 (2009). . . . . . . . . . . . . . . . . . . . . . . . . .   10

AT&T Techs, Inc. v. CWA, 475 U.S. 643 (1986). . . . . . . . . . . . . . . . . . . . . . .   18

Chi. Typographical Union No. 16 v. Chi. Sun-Times Inc.,
    860 F. 2d 1420, 1424 (7th Cir. 1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

Environmental Barrier Co., LLC v. Slurry Systems, Inc.,
    540 F.3d 598, 605 (7th Cir. 2008) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002).. . . . . . . . . . . . . .   21

John Wiley and Sons, Inc. v. Livingston, 376 U.S. 543. . . . . . . . . . . . . . . . . . .   18

Little, et al v. WMATA, No. 1:14-cv-1289 (RMC). . . . . . . . . . . . . . . . . . . . . .   11

Major League Baseball Ass'n v. Garvey, 532 U.S. 504, 509-510 (2001). . . . . .   18

NLRB v. Acme Industrial Co., 385 U.S. 432, 435, 87 S.Ct. 565, 567 (1967). . .   29

NLRB v. Independent Stave Co. 591 F.2d 443, 446 (8th Cir. 1979). . . . . . .   16–17

TMR Energy Ltd. v. State Prop. Fund of Ukraine,
    411 F.3d 296, 304-05 (D.C. Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). . . . . .   17

United Steelworkers of America v. American Mfg. Co.,
    363 U.S. 564 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17, 18, 23

United Steelworkers of America v. Enterprise Wheel & Car Corp.,
   363 U.S. 593 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

United Steelworkers v. Smoke-Craft, Inc.,
   652 F. 2d 1356, 13609 (9th Cir. 1981).. . . . . . . . . . . . . . . . . . . . . . . . .   23

United Steelworkers of America v. Warrior & Gulf Navigation Co.,
   363 U.S. 574 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post,
   959 F.2d 288, 290, 292 (D.C. Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . .   21

Washington Hosp. Ctr. v. Serv. Employees Int'l Union, Local 722, AFL-CIO,
   577 F. Supp. 206, 210, 211 (D.D.C. 1983) aff'd in part, rev'd in part, 746
   F.2d 1503 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

Winter v. NRDC, Inc., 555 U.S. 7 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

## JURISDICTIONAL STATEMENT

This case arises from a labor dispute between the Washington Metropolitan Area Transit Authority and the Union representing most of its employees, Local 689, Amalgamated Transit Union.  The dispute concerns arbitration invoked by the Union under both the parties' collective bargaining agreement and the WMATA enabling statute.  Section 81 of the WMATA Compact, DC Code Section 9-1107.01(81) confers original jurisdiction on United States District Courts of "all actions brought by or against the Authority . . ."

## ISSUES PRESENTED

1.    Whether two grievances filed by someone who is a WMATA Bus Operator and Union Officer, alleging that WMATA's Background Check Policy, as applied, violates a collective bargaining agreement which prohibits discrimination on the basis of race, should be presented in arbitration under the negotiated contractual provision, even though the grievance does not name an employee who has been personally harmed by interposition of the Policy?

2.    Whether the same two grievances must be arbitrated under the WMATA Compact provision which requires arbitration of "all labor disputes?"

3.    Whether, by enjoining arbitration of the two grievances, the District Court illegally impeded the Union from obtaining information which it is entitled to

obtain by statute as the collective bargaining representative of WMATA

employees?

All issues should be answered in the affirmative, and the District directed to compel

arbitration of the grievances, as explained in argument below.

## PERTINENT STATUTES

All are included in Appendix Volume IV.

## STATEMENT OF THE CASE AND THE FACTS

Original Grievances and Labor Disputes

Gerry Garnett is a full-time bus operator for the Washington Metropolitan Area

Transit Authority (the Plaintiff below and Appellee in this Court, denominated herein

as "WMATA"). He works at WMATA's Northern Division bus garage and serves

and Second Vice President of Local 689, Amalgamated Transit Union (the Defendant

below and Appellant in this Court, denominated herein as "Local 689" or "the

Union") which represents in collective bargaining most of WMATA's 8,000 active

employees. (Affidavit of Lockley, A. II-501-502) Mr. Garnett was removed in 2013

from a full-time Assistant Business Agent position by Union President Jackie Jeter,

who explained: "[Mr. Garnett] remains the elected 2nd Vice President and Executive

Board Member/Shop Steward . . . and may handle grievances in Step I and II at the

divisional level, the same as any steward in the field." (A. I-337) On May 27, 2014,

Mr. Garnett filed two grievances, numbered for processing purposes as "9406" and "9407." (A. I-143, 148)

Grievance 9406 was signed by him as a "group grievance . . . on behalf of Bus Operators, maintenance workers and clerical employees at the Northern Division." (A. I-144) 9406 asserted that due to a discrimination in the criminal justice system, African Americans are arrested more frequently than Caucasians. Consequently, he continued, WMATA's policies requiring employees to report arrests and WMATA's purchase of "background checks" to discern records of past court proceedings constitute discrimination on the basis of race. Mr. Garnett cited Section 101(b) of the collective bargaining agreement and "Title VII of the Civil Rights Act" in support of the grievance. Mr. Garnett attached to the grievance a table of statistics which he had procured from WMATA by means of an information request. (A. I-141-142) He asked that WMATA "cease application of their background check policy" and that all who had been terminated or "refused reinstatement" under the policy be "returned to work with all back pay and benefits."

Grievance 9407 was signed also by Mr. Garnett "on behalf of all employees at the Northern Division and any other Division that has Bus personnel employed." (A. I-149) Mr. Garnett noted specifically that WMATA officials regarded a criminal court resolution known as "Probation Before Judgment" or "PBJ" to be equivalent to

a conviction and, accordingly, had relied upon documented PBJ arrangements to disqualify employees from reinstatement to duty.  Mr. Garnett attached to his grievance some internet publications which defined "Probation Before Judgment (PBJ)," to be distinct from conviction. (A. I-150-151)  He asked that the disqualified employees be reinstated anyway and that WMATA cease its practice regarding records of PBJ, again citing again both contract Section 101(b) and Title VII of the Civil Rights Act.

Applicable Policies, Procedures, Contract and Statutory Provisions

      Each grievance centers on WMATA's application of its background screenings or "background check" policy.  That policy, denominated "7.2.3" was disseminated in 2012 and appears on the record in its entirety.  (A. III-351-366, referred to herein as "the Policy.")   WMATA conducts background checks (usually through a subcontractor) of employees represented by Local 689 under the following circumstances:  1) when they have been fired and are in the process of being returned to duty pursuant to a grievance settlement or arbitration award; 2) when they have applied for transfer or promotion to a "fiduciary" position or to a job which entails "unrestricted access to the public," (such as Bus Operator); 3) when they have been off-duty for 90 days or longer (for reasons such as illness, injury or unpaid leave); or 4) when they are under "reasonable suspicion" of "conduct which is inconsistent with

4

Metro Regulations" or for arrest or conviction of a crime.  (Policy Sections 2.01 and 5.03, A. III-351 and 357)  The consequences of positive background check results vary under the Policy, depending on whether the employee is seeking a job with access to the general public (such a Bus Operator) as opposed to a fiduciary position or any other position within WMATA, and also vary based on whether the conviction was for a felony.  For example, an employee convicted of Felony Assault, at any time in their life, cannot transfer to either a Bus Operator or Fiduciary position.  (Policy Appendices A and B, A. III-359-360)  If they wish to work in any non-public/non-fiduciary Metro position, they will be qualified provided that they were convicted more than ten years ago.  (Policy Appendix C, A. III-362)  If a background check uncovers a conviction which was not previously disclosed to WMATA, i.e. where an employee was hired before 2012 when more lax standards applied, the standards of the Policy Appendices will be applied to them in their current position, and they may actually lose their job as a result of applying for a promotion or transfer, or when returning from an extended absence.  (Policy Appendix D, A. III-363)

Section 101(b) was in the first collective bargaining agreement negotiated between Local 689 and WMATA in 1974 and has been amended only once, in 2009, when the parties added the phrase "sexual orientation" to the prohibited forms of workplace discrimination.  (A. I-140)  Section 101(b) reads as follows:

5

The parties will not discriminate against any employee of the Authority because of race, age, color, religion, sex, sexual orientation or national origin in any manner, including upgrading, demotion, transfer, layoff, termination, rate of pay or other forms of compensation or benefits.

(A. IV-10)

The collective bargaining relationship between WMATA and Local 689 is premised

on statutory authority.  Section 66(b) of the WMATA Compact reads:

The Authority shall deal with and enter into written contracts with employees as defined in section 152 of title 29 [subsection (3)][1], United States Code, through accredited representatives of such employees or representatives of any labor organization authorized to act for such employees concerning wages, salaries, hours, working conditions, and pension or retirement provisions.[2]

(A. IV-200) D.C. Code Section 9-1107.01(66(b))

The contractual grievance procedure says that an employee (with or without a Union

representative) may file a grievance with his or her immediate supervisor.  (Contract

Section 104(a), A. IV-12)  In addition, the Union may itself present a "question

---

[1]  Subsection (3) excludes only "an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway Labor Act , . . . or by another person who is not an employer as herein defined." 29 U.S.C. Section 152(3).

[2]  In comparison, the National Labor Relations Act compels collective bargaining over "wages, hours, and other terms and conditions of employment" 29 U.S.C. Section 158 (D).

arising under the agreement" in writing to any Department Director at Step 3 of the

grievance procedure.  (Contract Section 104(c), A. IV-13)  Unresolved grievances

and questions are appealed ultimately to binding arbitration under Section 105:

> Properly accredited representatives of the Authority shall meet and treat
> with properly accredited representatives of the Union, on all questions
> and grievances in accordance with Section 104.  Questions or grievances
> that cannot be amicably adjusted by said conferences shall be submitted
> to a Board of Arbitration composed of three (3) persons, one (1) to be
> chosen by the Authority, one (1) to be chosen by the Union, and the two
> (2) thus selected to select a third disinterested arbitrator: the findings of
> a majority of said Board of Arbitration to be final and binding.
> [Arbitrator selection procedure omitted.] All the conditions in this
> contract shall remain undisturbed during the arbitration proceedings.
> Each of the parties hereto shall bear the expense of its own arbitrator
> and the parties hereto shall jointly bear the expense of the third
> arbitrator.

(A. IV-15)

Any labor dispute, either a contractual dispute under Section 105 or one which is not

encompassed by the contractual arbitration procedure, must be resolved through

binding arbitration as a matter of statute, namely WMATA Compact Section 66(c):

> In case of any labor dispute involving the authority and such employees
> where collective bargaining does not result in agreement, the Authority
> shall submit such dispute to arbitration by a board composed of three
> persons . . .   The determination of the majority of the board of
> arbitration, thus established, shall be final and binding on all matters in
> dispute. . . .

D.C. Code Section 9-1107.01 (66(c)) (A. IV-200-201)

Under the WMATA Act, arbitration must be employed to resolve any "labor dispute,"

defined as follows:

> The term 'labor dispute' shall be broadly construed and shall include any controversy concerning wages, salaries, hours, working conditions, or benefits including health and welfare, sick leave, insurance or pension or retirement provisions but not limited thereto, and including any controversy concerning any differences or questions that may arise between the parties including but not limited to the making or maintaining of collective bargaining agreements, the terms to be included in such agreements, and the interpretation or application of such collective bargaining agreements and any grievance that may arise and questions concerning representation.

Compact Section 66(c), D.C. Code Section 9-1107.01 (66(c)) (A. IV-201)

Grievance Dispute Procedural History

On May 30, 2014 each Garnett grievance was presented to management and was referred without response by the Superintendent of the Northern Bus Division to WMATA's Office of Labor Relations. (A. I-14, 18) The parties met to discuss the grievances on October 14 and on November 6, 2014, Labor Relations Consultant Jeremy Milewski denied them in separate letters, solely on ground that they were untimely within the meaning of the agreement, while noting as well that Mr. Garnett submitted the grievances with no signatures of employees who were affected, other than his own. (A. I-16, 20) The Union voted to arbitrate grievance 9406 (the background check grievance) and notified WMATA of this intention by letter dated November 5. (A. I-146) Later, the Union also voted to arbitrate grievance 9407 regarding probations before judgment and notified WMATA of that determination by

8

letter dated December 3. (A. I-153) The party-appointed arbitrators arranged for lists to be obtained, then selected two separate neutral arbitrators to hear the disputes, James Darby in case 9406 and George Aleman in case 9407. (A. I-147, 154) Ultimately, the two grievances were set by the parties for hearing on May 18 and 19, 2015, respectively. Beginning in December, the Union requested certain information so as to be able to evaluate the cases and urged that the two should be consolidated in arbitration. WMATA agreed to provide the information and agreed, at least verbally, to consolidate the cases, but then ceased further processing. The Union counsel wrote to management on January 20 and 23 to confirm the agreement to consolidate and to reiterate its request for information. (A. I-155-159) The Union explained: "Accordingly, before the union decides unequivocally to arbitrate this matter, we would like to know more about the details of how the Background Check Policy has been implemented" then sought five separate items of information, including: 1) the ethnic demographics of WMATA's entire workforce; 2) all background checks for existing or reinstated employees over a three - year period; 3) the failures along with ethnicity and reason for each; 4) whether employees contested the findings and the outcomes; and, finally, 5) a written summary of the standards used by the contractor in performing background checks.

The Union heard nothing further from WMATA for two and one-half months.

On April 6, 2015, Attorney Harvey Levin, who represents WMATA in a class action brought against it by individuals who were, in general, refused employment due to background check results, wrote a letter to Union Counsel.  Mr. Levin revealed the pendency of the class action and explained its nature, then closed the letter as follows: "due to the pendency of [the class action] and due to the clarity of the law, WMATA will look to the Local for timely action to withdraw or otherwise terminate the arbitrations."  (A. I-23)  Mr. Levin did not argue that the grievances were procedurally infirm, but asserted instead that they were not arbitrable as a matter of substance.  According to Mr. Levin's letter, Section 101(b) of the collective bargaining agreement was insufficient to substantiate arbitration of statutory claims under the ruling in 14 Penn Plaza v. Pyett, 556 U.S. 247 (2009) because Section 101(b) did not identify any particular statutory protections.  (A. I-22-25)  Union Counsel replied the next day, disputing WMATA's view of Pyett. (A. I-68)  Union Counsel reminded Mr. Levin of WMATA's agreement to consolidate the two cases and further that the Union was still seeking important information that was pertinent to the case.  The Union asserted that it would seek to subpoena the requested information, if it was not forthcoming, and that the "[background check] policy should be revised, at the very least, in several key respects.  No one at WMATA has been willing to discuss such changes and I should say that these particular grievances

10

reflect accurately a high level of mistrust among employees regarding the background check enterprise." (A. I-69)  Mr. Levin did not respond, but WMATA filed the underlying Complaint in this case three days later (A. I-12) and, with arbitration pending, the Union followed up by requesting arbitral subpoenas for testimony and documents from WMATA officials in charge of the background check policy.  (A. I-240)

District Court Proceedings

WMATA filed, successively in the United States District Court for the District of Columbia: 1) a Complaint to Enjoin the two arbitration proceedings (A. I-12); Motions for a Temporary Restraining Order and Preliminary Injunction against the arbitration proceedings (A. I-81-84); and an Amended Complaint (A. I-165-186). The Union responded by filing:  1) a Motion to Dismiss the original Complaint (A. I-120-121); 2) an Opposition to the Motion for Preliminary Injunction (A. I-163-164); a second Motion to Dismiss the Amended Complaint (A. I-189-190).  Each party submitted affidavits and memoranda in support of their respective positions.  While the Motions to Dismiss were pending, Judge Rosemary Collyer (who also presides over the pending background check class action against WMATA, Little, et al v. WMATA, No. 1:14-cv-1289 (RMC)) issued on May 11, 2015, without a hearing, a Temporary Restraining Order to prevent arbitration from proceeding on May 18 and

11

19, then convened a preliminary hearing in open court on May 14, 2015. The hearing

was memorialized by transcription. (A. I-273-329) At the close of hearing, Judge

Collyer extended the restraining order for a few days and directed WMATA to

produce information which had been sought by the Union. She explained:

> You have three days to figure out a way to persuade the union that
> actually there's nothing happening yet, and there isn't a grievance on the
> policy itself, and so without a grievance on the policy itself, without
> somebody affected by it, there can be, by definition, no adverse impact.
> And the Union will withdraw the grievances. And then I will dismiss
> the case. All parties to pay their own fees.

(A. I-327-328)

The arbitration hearings were postponed and WMATA provided the Union with some

information in the form of "statistics, statistical breakdowns and narrative

information." (A. I-354, the exact information was unspecified on the record of

proceedings.) The Union deemed the data to be insufficient to justify withdrawing

either grievance. Each party then provided the court with an additional memorandum

(A. I-131-339 and 346-349) and, on June 10 jointly reported the status of the case.

(A. I-354-5) By Memorandum Opinion dated June 29, Judge Collyer granted

WMATA's Temporary and Preliminary Motions to Enjoin the Arbitrations. (A. I-

358-370) The parties moved jointly for Entry of Final Decision (A. I-372-3) and

Judge Collyer obliged on July 14 by entering judgment in favor of WMATA and

converting her preliminary injunction to a permanent one. (A. I-375) The Defendant

Union filed a timely appeal, which is now pending before this Court.

Trial Court Opinion

The opinion below was composed originally in the context of a motion for preliminary relief and addressed all of the standards that govern determination of that remedy, citing Winter v. NRDC, Inc., 555 U.S. 7 (2008).  The District Court determined that public interest favored neither side, but that WMATA would suffer irreparable harm if arbitration proceeded and that the balance of the equities supported WMATA's fear of arbitration.  While the Union does not agree with the analysis, the Union declines to press on appeal any of the determinations which are related exclusively to the propriety of preliminary relief.  The Union argument on appeal concerns only the District Court determination that WMATA's complaint was "likely to succeed," as the Memorandum Opinion explained on pages 8-10.  (A. I-365-367)

The District Court's analysis of the merits of the dispute may be fairly summarized as follows.  The District Court determined that the standard which governed arbitrability of the grievance was found not in the parties' collective bargaining agreement, but in the labor dispute arbitration provision of the WMATA Compact, Section 66( c).  D.C. Code Section 9-1107.01(A. IV-200-201)  She read that provision as a broad definition of arbitrable disputes, but one which is exclusive

to "employees" of the Authority. The Judge saw the grievances as contesting certain applications of WMATA's Policy, not the overall validity of the Policy itself. She noted as well that the author of the grievances, Union Vice President Garnett, did not argue that he was personally affected because of his own background, but asserted instead that the Policy was being applied to others in a discriminatory manner. The Judge held, therefore, that the Union did not prove that an employee was actually harmed or impeded in application of the Policy and, consequently, the Union could not demand arbitration under the language of Section 66(c). The District Court accepted at face value WMATA's assertions that: 1) WMATA had not terminated or disciplined any employee for past convictions or PBJ's due to disqualification under the Policy; 2) no employee subject to screening following return to duty or reasonable suspicion had failed the screening; 3) WMATA declined to reinstate five employees for failing background checks, but none were tested while they were employees; and 4) WMATA had discharged two employees only because they failed to disclose their criminal backgrounds, not because the contents of those backgrounds disqualified them. In summary, the Memorandum Opinion concluded as follows:

> The Compact only requires WMATA to arbitrate disputes concerning 'employees' as the NLRA defines the word. Persons who are discharged by WMATA (without a successful grievance and order of reinstatement) who apply for reemployment, as reflected in Grievance 9407, are not "employees" within the meaning of the Compact and thus their Grievance is not arbitrable.

14

(Memorandum Opinion, p. 10, A. I-367)

The Union appealed and now requests that the District Court decision be reversed, and that WMATA be compelled to arbitrate grievances 9406 and 9407 without further delay.

## SUMMARY OF ARGUMENT

The District Court enjoined arbitration of the grievances of Mr. Garnett primarily because he did not have standing to complain about racist application of WMATA's background check policy. This determination by the court is a procedural one, not substantive, since the collective bargaining agreement clearly prohibits racial discrimination and Mr. Garnett is covered by the agreement. Procedural arbitrability questions are to be resolved in arbitration, not in court. In addition, the District Court opinion has misread WMATA's Compact. The grievances may not name any particular employees but clearly set forth "labor disputes" within the meaning of the Compact and pertain to WMATA employees as a whole, since all are employees are subject to background checks when they seek certain transfers or promotions or return to work from long-term absences, including reinstatement to duty by order of a labor arbitrator. Therefore, the grievances are arbitrable under the WMATA Compact. Finally, the Union is entitled to obtain data which bears on the application of the background check policy and determine whether, in fact, it discriminates on the basis

15

of race.  By interdicting the arbitration proceedings, the Court prevented the Union

from pursuing that data through lawful, normal channels of collective bargaining

inquiry.  For each and all of these reasons, the District Court determination should be

set aside and the court directed to compel rather than enjoin arbitration of Mr.

Garnett's grievances.

## ARGUMENT

I.     THE DISTRICT COURT REFUSED TO ENFORCE THE PARTIES'
       LAWFUL COLLECTIVE BARGAINING AGREEMENT TO SUBMIT
       UNRESOLVED GRIEVANCE DISPUTES TO BINDING ARBITRATION.

   A.     WMATA and the Union are Authorized by Statute to Agree Through
          Collective Bargaining to Arbitrate Workplace Disputes.

Section 66(b) of the WMATA Compact authorizes collective bargaining of a

scope which mirrors almost exactly bargaining in the private sector, including

"wages, salaries, hours, working conditions, and pension or retirement provisions."

D.C. Code Section 9-1107.01 (66(b)) (A. IV-200) [3/] Negotiable working conditions

include a demand to resolve through binding arbitration any grievances or other

disputes which arise during the term of a collective bargaining agreement.  Indeed,

the questions of whether to include such a clause and its content are "mandatory"

subjects of bargaining, according to the National Labor Relations Board (See NLRB

---

[3/]     The only obvious difference is the obligation to bargain over pension and
retirement is implicit under the Federal Act, but express in the WMATA
statute.

16

v. Independent Stave Co. 591 F.2d 443, 446 (8th Cir. 1979)),  and appear routinely,

if not universally, in collective bargaining agreements throughout the country.

> B.    The Collective Bargaining Agreement Between These Parties Requires
> Binding Arbitration to Resolve "Questions and Grievances."

Section 105 of the Collective Bargaining Agreement requires WMATA to

"meet and treat" with the Union "on all questions and grievances."  Whenever the

questions and grievances "cannot be amicably resolved," they "shall be submitted to

a Board of Arbitration" and the findings thereof are "to be final and binding." (A. IV-

15)

> C.    Contractual Grievance Resolution by Professional Labor Arbitrators is
> Favored by the Courts as a Matter of Law.

Courts will not consider the merits of contract disputes which are subject

to arbitration.  United Steelworkers of America v. American Mfg. Co., 363 U.S. 564

(1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S.

574 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363

U.S. 593 (1960).  Courts defer to an arbitrator "as long as the arbitrator is even

arguably construing or applying the contract."  United Paperworkers Int'l Union v.

Misco, Inc., 484 U.S. 29, 38 (1987).  Whether the arbitrator's decision was wrong is

irrelevant to the Court's analysis – the courts have held that even serious error on the

arbitrator's part does not justify overturning the decision, where he is construing the

parties' agreement and acting within the scope of his authority.   Major League

Baseball Ass'n v. Garvey, 532 U.S. 504, 509-510 (2001)  In the context of collective

bargaining, an arbitration provision is not mere contingent litigation planning.

Rather, the Supreme Court has noted that the parties bargain for the wisdom and

expertise of labor arbitrators who, as a profession, bear particular skills and

knowledge needed to implement a bargaining table accord.  Accordingly, the courts

refrain assiduously from resolving the merits of an underlying dispute in the guise of

a determination as to "arbitrability."

> The function of the court is very limited when the parties have agreed
> to submit all   questions of contract interpretation to the arbitrator. It is
> confined to ascertaining whether the party seeking arbitration is making
> a claim which on its face is governed by the contract. Whether the
> moving party is right or wrong is a question of contract interpretation for
> the arbitrator. In these circumstances the moving party should not be
> deprived of the arbitrator's judgment, when it was his judgment and all
> that it connotes that was bargained for.

 United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564 (1960)

A collective bargaining dispute/grievance is generally arbitrable

provided that three simple tests are met in court: 1) the parties are bound by a

collective bargaining agreement; 2) the agreement provides for arbitration of their

disputes; 3) there is a dispute between them; and 4) the dispute is not one which the

parties have excluded from arbitration.  John Wiley and Sons, Inc. v. Livingston, 376

U.S. 543 and AT&T Techs, Inc. v. CWA, 475 U.S. 643 (1986).

18

D.    The Procedural Arbitrability of the Garnett Grievances were Resolved by the Court, Rather than by a Board of Arbitration as the law Commands.

1.    The court below determined, in essence, that the grievant did not have standing to challenge the application of WMATA's background check policy because he had never been directed impacted by it.

Bus Operator Garnett, who also serves as Second Vice President of the Union, asserted that WMATA's Policy regarding background checks violated in application Section 101(b), which reads:    "The parties will not discriminate against any employee of the Authority because of race . . . in any manner. . . ."[4/]    Mr. Garnett noted in grievance 9406 that WMATA's background check policy relies, in general, on criminal justice system determinations and he asserted that the criminal justice system is itself discriminatory against African Americans. (A. I-144) In grievance 9407 he noted in particular that so-called "probation before judgment" court records which are retrieved through the background check policy are applied by WMATA as though they were convictions, which he regards to be both mistaken and to generate an exaggerated negative impact on African-Americans. (A. I-148) Mr. Garnett is a WMATA employee and is entitled without question to grieve to enforce the collective

---

[4/]    Mr. Garnett also cites Title VII of the Civil Rights Act.  While that Act and cases which have arisen thereunder may well inform an application of Section 101(b), the Union is not urging in this case, and did not urge before the Court below, that the invocation of Title VII constitutes a "question or grievance" which must be arbitrated under Section 105.

bargaining agreement. Moreover, his grievance raises without question a challenge under Section 101(b) of the collective bargaining agreement. The contract and record of proceedings evince no assertion by WMATA that Section 101(b) should not be enforced in arbitration, and the decision below also does not so assert. Accordingly, the undisputed facts of this case meet all of the legal requirements to compel arbitration: the parties have an agreement to arbitrate disputes, there is an actual grievance dispute over contractual subject matter, and the parties have not excluded from arbitration. However, the Court went on to decide, essentially, that Mr. Garnett does not possess contractual "standing" to challenge application of the policy, since it has not been applied to him personally. (Memorandum Opinion, p. 9, A.366) While the court's contractual interpretation on this score is mistaken, in the Union view,[5]

_____

[5]  The Policy would certainly discourage workers from seeking a promotion or transfer if they were hired in an era of more relaxed standards, with a conviction on their record which, now, constitutes a "permanent disqualifier," because exposing their distant past now might well imperil their job. In this way, the Policy would impact workers even though none were actually disqualified. Moreover, the Union would be in no better position to bring them forward as grievants than it would be to induce them to apply for a transfer which would elicit in turn a background check. It should be noted that the standing of a Union Officer to file a grievance and the scope of any grievance thus filed has been repeatedly, one may say routinely, determined by arbitrators acting under the agreement of these parties. See various arbitration awards provided to the trial. (A. II-155-500) An excellent example is the case of <u>Raymond Jackson</u> (Fishgold, 2015) (A. II-395) in which a shop steward contested the allocation and assignment of particular workers to Lead Personnel positions, without reference to the rights or claims of any particular worker. The Board of Arbitration denied

the critical point on appeal is that the standing of a grievant to raise a particular issue (or, stated more properly, the right of the Union to arbitrate a grievance authored by a grievant who has not been personally harmed) is NOT a question for the court: by contract and by law it is a question for a Board of Arbitration.  The issue decided by the District Court is one of arbitration procedure, not substance.

      2.    Mr. Garnett's standing to grieve under the contract is an issue of procedural, not substantive arbitrability which should be resolved in arbitration, not in court.

The U.S. Supreme Court held conclusively that procedural arbitrability issues are to be resolved in arbitration, not in court.  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002)  The analysis essentially ratified the caselaw which had already developed in the District of Columbia Circuit,  See Washington Hosp. Ctr. v. Serv. Employees Int'l Union, Local 722, AFL-CIO, 577 F. Supp. 206, 210, 211 (D.D.C. 1983) aff'd in part, rev'd in part, 746 F.2d 1503 (D.C. Cir. 1984) (arbitration compelled despite claims that the grievances were filed by improper grievants and that arbitration was invoked too late) and Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post, 959 F.2d 288, 290, 292 (D.C. Cir. 1992); and Howsam has been readily applied by this Court:

---

the grievance on its merits but had no trouble affirming that the scope of the grievance document was adequate.

> The SPF next argues the arbitrators exceeded their jurisdiction because they refused to enforce the provision of the 1999 agreement requiring TMR to initiate the arbitration process within 60 days after it had become clear that the parties could not settle the dispute through negotiation. . . .
>
> [A] time limitation for invoking arbitration is the sort of "gateway question," like waiver and delay, that is presumptively for the arbitrator, not the court, to decide. The SPF points to nothing in the 1999 agreement that suggests the parties intended to change that presumptive allocation of authority.

TMR Energy Ltd. v. State Prop. Fund of Ukraine, 411 F.3d 296, 304-05 (D.C. Cir. 2005)

Procedural arbitrability issues are consigned to an arbitrator because their resolution is necessarily intertwined with the merits of the case. An arbitrator's view of the merits, the nature of the underlying dispute, inform his or her evaluation of the requisite pre-arbitration procedure. Conversely, a court cannot examine a procedural question, like standing to bring a contractual grievance, without considering the nature of the underlying grievance. The instant case provides an excellent object lesson in the context of industrial relations. Mr. Garnett urges that a background check policy premised on criminal justice records discriminates against African Americans. The question of "standing" under the contract is whether the parties contemplated that Mr. Garnett (regardless of his own personal background, by the way) is entitled to protest against a policy which affects him only indirectly, i.e. turns his workplace into a racist environment. The answer turns not only on the wording of the collective bargaining

22

agreement and of the grievance, but of the overall nature of the parties' relationship, their ways of doing business and the impact of the dispute on the work of the shop floor (or, in this case, the bus garage).  As Mr. Garnett reminded WMATA by attaching to grievance 9506 the statistical racial make-up of the Local 689 bargaining unit, (A. I-141-142)  80% of the union workers are African American, who presumably have a keen interest in making sure that they are not impeded by a policy which discriminates against people of their particular race.  Whether the grievance should be entertained, then, in this workplace under this contract is properly determined by an arbitrator.  Otherwise, the Union would "be deprived of the arbitrator's judgment" in violation of the parties' contract. United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 568 (1960)    Under no circumstances should the decision be made by the court, because standing is a procedural objection to arbitrability, not a substantive one.

> That is the sense in which standing to arbitrate should be understood: is the petitioner a proper party to raise a particular claim in the arbitration? This explains why courts have not hesitated to hold that standing is a matter for the arbitrator to resolve, even though (as we note in a moment) arbitrability is usually an issue for the court.

Environmental Barrier Co., LLC v. Slurry Systems, Inc., 540 F.3d 598, 605 (7th Cir. 2008)  See also Chi. Typographical Union No. 16 v. Chi. Sun-Times Inc., 860 F. 2d 1420, 1424 (7th Cir. 1988) and United Steelworkers v. Smoke-Craft, Inc., 652 F. 2d 1356, 13609 (9th Cir. 1981).

II.    THE GRIEVANCE ISSUES COMPRISE "LABOR DISPUTES" WHICH ARE
       ARBITRABLE AS A MATTER OF STATUTE.

The District Court opinion focused primarily on the language of Section 66(c)

of the WMATA Compact.  Indeed, the Union's claim of arbitration under 66(b) and

the collective bargaining agreement arbitration clause were scarcely mentioned.  Yet

Section 66(c) ascribed to WMAT a substantial duty to arbitrate, as it extends to "all

labor disputes," which are defined with extraordinary breadth:

> any controversy concerning wages, salaries, hours, working conditions,
> or benefits including health and welfare, sick leave, insurance or pension
> or retirement provisions but not limited thereto, and including any
> controversy concerning any differences or questions that may arise
> between the parties including but not limited to the making or
> maintaining of collective bargaining agreements, the terms to be included
> in such agreements, and the interpretation or application of such
> collective bargaining agreements and any grievance that may arise and
> questions concerning representation.

D.C. Code Section 9-1107.01 (66(c)) (A. IV-200-201)

Grievance disputes such as the instant case are listed as only a small subset of disputes

which are consigned to arbitration.  Numerous arbitration awards between the parties

over the years have pertained not to the application of terms of the collective

bargaining agreement, but to broad-based institutional problems like questions

concerning representation (A. II-1-154)

Notwithstanding the broad statutory arbitration scheme, the District Court noted

that it was limited to disputes "involving" WMATA employees.  Judge Collyer

24

reasoned further that Mr. Garnett's direct knowledge of the background check policy in application was premised on the experience of a few persons who had been fired by WMATA for reasons unrelated to the background check policy. While resolving grievances, the Union and grievants agreed to undergo background checks in conformance with WMATA's Policy. Since reinstatement was denied in each case because the workers could not clear the Policy's requirements, the Judge determined that they were not "employees" within the meaning of Section 66(c) when the background check policy was applied to them and, accordingly, that a grievance on their behalf was not arbitrable under that section. The District Court determination is factually infirm, however. First, the Court below misread the grievance. While the grievance mentions reinstatement of the individuals as one part of the remedy sought, the overall grievance worded much more broadly. Grievance 9406 notes that contract Section 101(b) precludes discrimination on the basis of race "in ANY manner including upgrading, demotion, transfer . . . ." Further, the grievance seeks, as a remedy, "that WMATA ceases in its application of their background check policy." (A. I-144) This aspect of the grievance, at the very least, clearly and directly involved current, existing WMATA employees. Even WMATA, in describing the gravamen of the two grievances, characterized them as follows:

> The grievances do not inform WMATA who, if anyone, the grievants are.
> The grievances do not hint at the number of grievants. The grievances

do not cite a single particular instance of disparate impact resulting from WMATA's applying its criminal background screening policies.

Rather, both grievances are grievances on behalf of purported groups of unnamed persons.    The grievances claim discrimination base on 'disparate impact on African Americans' (Grievance No. 9406) and a 'practice that is discriminatory against people of color.' (Grievance No. 9407)

(WMATA's Memorandum of Points and Authorities, pp. 8-9, A. I-97-98)

Second, WMATA employees and their Union have every right to make sure that

WMATA, as a workplace, is free from racial discrimination against anyone, including

those who work in fear.  The idea, which the court below seemed to accept implicitly,

that the Union may attack workplace discrimination only if it presents the name of one

or more current employees who have been directly harmed, is simply wrong.  The right

expressed in the contract does not only grant individuals a right to work without being

discriminated against, but also grants them the right to work in and for an institution

which does not discriminate on the basis of race.  Section 101(b) says exactly that:

"The parties will not discriminate against <u>any employee of the Authority</u> because of

race. . . ." (A. IV-10, emphasis added)  It requires only modest reflection to see why

the Union should be permitted to proceed to arbitration even in the absence of a

named, directly harmed individual.   The point of the background check policy,

presumably, is to impel employees who have experienced the criminal justice system

at some time in their lives to avoid extended absence from work or to refrain from

26

seeking promotion or transfer to particular WMATA classifications (including, by the way, the most numerous of all Bus Operator) because they fear the outcome of a background check which might affect their current status. Such employees are certainly affected by the Policy but would never be known by name to either WMATA or to the Union, and would be unlikely to come forward to identify themselves in the workplace. If the grievant Garnett is right, and the Policy has proven to be discriminatory in practice, then the Union has every right and reason to challenge the Policy and seek an arbitral order that the Policy end or be modified. Of course it is conceivable at least that Mr. Garnett and the Union may be misreading Section 101(b), but a determination of that section's meaning and application is for an arbitrator, not for a court. In effect, the Court decision below leaves the Union without a means to challenge the background check policy which (we must assume for present purposes) is discriminatory in application. The Court below has effectively constrained union members from exercising contractual rights to transfer to vacant positions they are otherwise qualified to hold. (See, for example, Contract Section 204(f) which governs selection and training for the classification of Bus Operator, A. IV-46-47) Section 66(c) of the Compact, an extraordinarily broad grant of arbitral jurisdiction, should not be applied to constrain Union enforcement of Contract Section 101(b), as the District Court reasoned here.

27

III.    THE DISTRICT COURT ESSENTIALLY, AND ILLEGALLY, DENIED THE UNION ACCESS TO DETAILED INFORMATION ABOUT WMATA'S APPLICATION OF ITS  BACKGROUND CHECK POLICY TO UNION-REPRESENTED WORKERS.

The dispute over arbitrability arose in this case only after and only because the Union requested detailed information about the policy's application.  The Union invoked arbitration of grievances 9406 and 9407 in successive months, November and December, 2014, and they were processed by WMATA, which named its arbitrator in each case and, with the Union, selected neutral arbitrators then discussed consolidation of the cases and other pre-hearing procedural matters, never hinting that the arbitration process should cease until the Union asked (A. I-158), then insisted (A. I-68–69), that it receive accumulated records of the Policy's application to employees. At that point, WMATA refused to proceed and sought injunctive relief against arbitration.  (A. I-22–24) As the parties argued this claim of irreparable harm in open court, the Judge recognized readily the harm inflicted on their labor relationship through WMATA's refusal to allow the Union to examine WMATA information regarding its application of the background check policy.  After learning that the Union had requested, repeatedly, to examine the records and determine whether the Garnett general allegations were correct, Judge Collyer said:

> Anything they want, you should just hand over.  You are a public organization. . . .
>
> *     *     *

28

> If there is literally no one who has been denied or that we can identify
> who has failed to apply because they have something, and they actually
> fit within the policy, because the policy is more narrow when you
> actually look at it than one expects, can we all agree that WMATA will
> take three days and give everything they can to the union to satisfy them
> that there's nobody to be arbitrated, there is no grievant there, this is not
> the drone you are looking for?

(Hearing Transcript 39-41, A. I-311-313)

Apart from the wisdom of Judge Collyer's counsel, her view reflected the clear law of labor relations in the United States.  A Union is entitled to learn all facts relevant to its superintendency of the collective bargaining agreement.   In <u>NLRB v. Acme Industrial Co.</u>, 385 U.S. 432, 435, 87 S.Ct. 565, 567 (1967) the Court affirmed that the Union was entitled to obtain by letter any information regarding equipment which had been transferred from a plant in order to facilitate prohibited subcontracting.  The Company's argument, that the Union could proceed to arbitration with a grievance with or without the requested information, was specifically rejected.

In the current case, WMATA's hastily assembled information did not convince the Union that no one was harmed by refusal to transfer or by intimidation under the Policy and the Union persisted in the grievance arbitration.  The Judge never evaluated the evidence to determine whether it was or was not consistent with the Union's request (A. I-158) or even whether it tended to show that there was a violation of Section 101(b) or not.  By ending arbitration proceedings the court cut off the Union's

29

demand to obtain full information or seeking a ruling from the arbitrator under the contract. In this fashion, the District Court ruling pre-empted the Union from enforcing its members' right to bargaining collectively (through the grievance procedure or otherwise) over the vitally important issues of transfer, promotion, long term absence and freedom from racial discrimination.

<u>Conclusion and Remedy</u>

For the foregoing reasons, the permanent injunction against arbitration of grievances 9406 and 9407 should be overturned. The matter should be returned to the District Court for the purpose of ordering the parties to resume arbitration on the earliest possible date.

Respectfully submitted,

_____/s/ Douglas Taylor_____
Douglas Taylor
GROMFINE, TAYLOR & TYLER
1420 King Street, Suite 500
Alexandria , VA  22314
(703) 683-7782  – dtaylor@lbgt.com